## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDWARD CECIL WASHINGTON JR., Plaintiff, v. AMERICAN EXPRESS COMPANY, Defendant.** | **Civil Action No.: _____ (To be assigned by Clerk of Court)   COMPLAINT FOR EMPLOYMENT  RETALIATION AND VIOLATION  OF FEDERAL CIVIL RIGHTS LAWS   JURY TRIAL DEMANDED** |

## — JURY TRIAL DEMANDED —

### SECTION I — INTRODUCTION

Plaintiff Edward Cecil Washington Jr. ("Plaintiff") brings this civil action against Defendant American Express Company ("Defendant" or "American Express") for unlawful employment retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), and related federal law. This action arises from Defendant's deliberate and unlawful retaliatory conduct directed against Plaintiff following his engagement in legally protected activity in the workplace. Plaintiff seeks compensatory damages, punitive damages, injunctive relief, and all other relief to which he is entitled under applicable federal law.

Plaintiff engaged in protected activity under Title VII and related federal statutes by opposing unlawful employment practices and/or participating in protected proceedings. In direct response to Plaintiff's protected activity, Defendant subjected Plaintiff to materially adverse employment actions, including but not limited to those described herein, that would dissuade a reasonable employee from making or supporting a charge of discrimination. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered

significant economic harm, emotional distress, loss of career advancement, and other compensable damages. Plaintiff now seeks redress through this Court.

## SECTION II — JURISDICTION AND VENUE

1.  This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4), as this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and other federal statutes as set forth herein.

2.  Venue is proper in the United States District Court for the District of New Jersey under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred within this District.

3.  Plaintiff has exhausted all required administrative remedies prior to filing this Complaint. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff received a Notice of Right to Sue from the EEOC and files this Complaint within 90 days of receipt of that notice.

*EEOC Charge No. 520-2025-00461, Right-to-Sue issued on June 23, 2026*

## SECTION III — PARTIES

4.  Plaintiff Edward Cecil Washington Jr. is an adult individual residing in *319 East Grant Avenue, Roselle Park, NJ 07204.* At all times relevant to this Complaint, Plaintiff was employed by Defendant and constituted an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f).

5.  Defendant American Express Company is a corporation duly organized and existing under the laws of the State of New York, with a principal place of business located at 200 Vesey Street, New York, New York 10285. Defendant is an "employer" within the meaning of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), in that it employs fifteen (15) or more persons and is engaged in an industry affecting commerce.

6. At all times relevant to this Complaint, Defendant American Express Company acted by and through its duly authorized officers, directors, agents, supervisors, managers, and employees, each of whom acted within the course and scope of their employment or agency relationship with Defendant.

## SECTION IV — FACTUAL ALLEGATIONS

7. Plaintiff was employed by Defendant American Express Company in the position of **Account Manager**, commencing on or about **January 10, 2014**.

8. Throughout the course of his employment with Defendant, Plaintiff consistently and competently performed his duties, met and exceeded legitimate performance expectations, and conducted himself as a diligent, professional, and qualified employee.

9. On or about **June 2023** Plaintiff engaged in protected activity within the meaning of Title VII and/or other applicable federal law by *I filed a very descriptive Ethics Complaint against Directors David Banovetz and Kelly Moore along with MBD Lisa Alich in June 2023.  I laid out my complaint in detail and even nuanced it (graphically) by adding that it felt like bias based on race but I only wanted to make it about me losing a great business opportunity with a long-held client because a bad business decision was made by my former director.*

*To summarize, over a 6-8 week period, David never reached out to me to get my side of the story before taking my client away and asked my uninvolved new manager to*

*give me the news.  Two directors, and a manager who made the accusation, got together and discussed my account and David made a decision that eventually cost me bonus money on my eoy AIA.  Subsequently, the person who received my account would go on to make a significant overall gain because of this account (that is unequivocal) and likely ranked number one on the team for eoy 2023 and current 2024 (rankings are hidden).*

*In June of 2023, I explained all of this to the person who facilitated my ethics complaint on your team, Amanda Soto - Manager, Colleague and Labor Relations.  I did not hear back from her until I reached out in December 2023 and her response was it was out of her hands and to have a nice holiday.  Amanda asked me directly if I wanted her to facilitate a call between the 3 persons involved and me, and I said yes since my request did not work the first time (ergo the complaint).  Eventually, I had to Cc both of the directors VP's to be heard  (my still lingering questions are did she think they would plan a conversation with me about what happened after she spoke to them?  Was it bias that there was no follow-up?).*

*April 22nd, the morning I was terminated, was my final outreach to Amanda.  I relayed to her that I felt the ethics complaint I filed with her was not fully heard, and shared that the reason for my delayed email response leading up to my termination was that I was interviewing and feverishly looking for a new role and I didn't want there to be retaliation by David with news getting to interviewers about who I was as a team member and colleague.  I expressed this because during our 1:1 shortly after*

*Q1 2024 in early April, David repeatedly, at least 5 or 6 times, asked me if the complaint was over...I did not say yes or no.  I can only speculate that the compliance item was already in the works and maybe he didn't have to push it forward for possible termination to the VPs and SVP if I said yes the ethics complaint was over.  The team was/is in the dark about the subjective and gray nature of recorded call handling and what/how it gets moved forward.*

*One can speculate retaliation from David's questioning, but further to that I was given information by former team members years ago that David watched me closely. One person is someone who currently works at Amex who shared they were retaliated against, and another person was someone who is now deceased.  I brushed that conversation off, but many times it did feel like there was a bias, enough so that a couple of the current team members felt I was singled out at times too.  I was also one of two black team members who was told separately by our respective managers that we had a "bad brand."  We discovered this exact phrase at the 2023 Las Vegas Amex conference when we unwittingly expressed what our managers said about us in 1:1's.....they eventually rescinded those comments and one of the managers shared management style thoughts there.  All told my reason for not saying anything is to always be "professional" and not speculate as a person of color.*

*I was hoping that if you and Danielle had gotten back to me I could explain this information on a call instead of a potentially convoluted email.  This email is not a*

*bash or disgruntlement, it's just the facts my facts in a wordy email. I loved working for American Express and would love to be considered a rehire. I also understand that facts or details may never be discerned, what may or may not have happened can fall by the wayside, and that I am where I am in the process.*

10. Plaintiff's protected activity was known to Defendant's management and relevant decision-makers at or near the time Plaintiff engaged in that activity, including but not limited to *Amy Dicker - Manager my direct manager, David Banovetz - Director, Diana Yuen - Vice President, Aliya Bokari - Senior Vice President. After Amy the next 3 are decision makers and either they were not aware that David Banovetz managed my ethics complaint or they ignored it. Amy Dicker knew for certain that my ethics complaint was managed by David Banovetz but did not say anything to the contrary as he retaliated against me for filing the complaint.*

11. Following Plaintiff's engagement in protected activity, Defendant subjected Plaintiff to materially adverse employment actions including, but not limited to: *Dispute and Details:In 2014 our new 4 person team was told that Steve Squeri and Susan Chapman-Hughes put this team together because Large Market (LM) lacked a phone team to go after 15,000+ clients who were high revenue clients (300M to 1.5B) and had no one to speak to but customer service when a client left the Amex field reps. Upon our initial hire as a brand new team we relied on spreadsheets to do our jobs and after a year or so we were moved to Middle Market (MM) where they had more phone tools. It took about two years to assemble all the necessary phone operations for the team in MM. Although we were continuously making strides there, our growth goals were not as clearly defined as they are now, and by*

*the third year in MM we felt somewhat lost as we lacked methods to grow our large market business in an effective way.*

*After four years or so in Middle Market we were moved to the LM  team in 2022. With that move we got the addition of a VP, a Dir, and two managers to split the team and started making significant progress towards a legitimate growth goal.  These strides also meant taking on even more sophisticated tasks like managing over 100 accounts and 200+ card products (it used to be 400+ clients), submitting PIMs for retention, performing weeks/months long implementations, managing lots annual underwritings and limit issues, filing complaints from phone calls and email correspondence, and, what I was terminated for, compliance/call recordings and monitoring. In addition to these items in 2023-24 there was a transition from LIBOR to SOFR that added a significant pain point, as well the use of only approved company documents was implemented along with an updated KPR report that required significant new training.*

*The new call recording/compliance piece, which the team anticipated, came in fragmented and overwhelming chunks. At the top of 2024 we went from no standing calls with Compliance, to bi-weekly calls with Compliance, to weekly calls with Compliance right before I was terminated.  Guidance changed a LOT, sometimes daily, as the GCO team had to interpret banking laws and apply them to a PRG team they knew little about.  The Compliance team, charged with enforcement and training, are just getting up to speed on the PRG's phone role vs*

*other comparable roles. The recorded calls are being conducted as part of our transition from a Tier 4 to a Tier 2 bank. Steve highlighted this initiative in his recent town hall immediately after discussing earnings, emphasizing the company's focus on risk management and achieving Tier 2 status. He acknowledged the growing pains Amex would encounter during this process. Given my ten years with American Express without any performance issues, I did not expect my termination to be part of these growing pains. Outside of the call recording reason I was terminated; my immediate manager can attest that I have always made the necessary corrections to improve my job performance.*

*My goal with this email is that with closer examination the reason for my termination can be seen as an error and mistake rather than misconduct. The process to build compliance has been cumbersome, my former teammates and immediate manager, and many many peers know that I strongly support the blue box in the 10+ years I worked for American Express.  I did not hear the call in question but I can tell you that I wasn't trying to close an opportunity with the client, with an end goal to enrich myself.  I can assure you there was no pattern that can be presented to you that led up to the reason I was terminated.*

*I was given a first misconduct on February 6th. I disagreed with the initial misconduct charge but the Compliance team instructed my manager that I needed to resend the email and simply state, "I agree." I complied under pressure, although I believed the infraction needed more context for the PRG team and Compliance to learn from. There are many nuances and gray areas not being accounted for, causing daily struggles for the PRG team. Because of these ambiguities, I know team members*

*are selling less due to fear of repercussions like mine, which is harming morale and reducing profitability. Steve created this team to manage LM clients and expand business through RFPs, new products, and incentives. When I was terminated, I was told that my VP, SVP, and the Compliance VP agreed with the decision. However, I do not believe, and I would hazard that the rest of the PRG team feels the same way, that these leaders are not fully informed about the challenges the team faces having client growth conversations.*

*In summary, my actions were never intended to harm American Express, enrich myself, or deceive the client. After being at the company for 10+ years and enduring such a fractured Compliance process in '23 and '24, with a lot of gray areas and many new items presented to the PRG team, I would at least like my termination to be reconsidered and have my status updated to a "rehire." Before I was terminated, I was having some amazing conversations with hiring leaders and American Express recruiters. Because of the many changes to the role w/o consideration of workload, I was looking for another opportunity and believe many on the PRG team are doing the same right now as morale was at an all-time low when I was let go. The team has been deemed so important that visibility has reached up to the EVP/GM. If this team is truly important, I believe the PRG team deserves more than just fear of repercussion. Most of the team loves the challenge but have felt overwhelmed and not assuaged beyond the manager level.*

12. The adverse employment actions taken against Plaintiff were causally connected to his protected activity. The temporal proximity between Plaintiff's engagement in protected activity and the commencement of the adverse employment actions taken against him,

together with other direct and circumstantial evidence, demonstrates a retaliatory motive on the part of Defendant and its agents.

13. To the extent Defendant has proffered or may proffer any reason(s) for the adverse employment actions described herein, such reason(s) are pretextual, fabricated, and not the true reason(s) for the actions taken against Plaintiff. The proffered reasons are a mere pretext designed to conceal Defendant's unlawful retaliatory intent and conduct.

14. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer significant and ongoing damages, including but not limited to: lost wages and back pay; lost employment benefits; loss of career advancement and professional opportunities; severe emotional distress; humiliation and embarrassment; mental anguish; and other economic and non-economic damages in amounts to be proven at trial.

## SECTION V — CAUSES OF ACTION

### COUNT I

### RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (42 U.S.C. § 2000E-3(A))

15. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

16. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a), prohibits an employer from discriminating against any employee because that employee has opposed any practice made an unlawful employment practice under Title VII, or

because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

17. As set forth above, Plaintiff engaged in protected activity under Title VII and/or other applicable federal law by opposing unlawful employment practices and/or participating in a protected proceeding.

18. Defendant knew of Plaintiff's protected activity at or near the time Plaintiff engaged in that activity, and Defendant's relevant decision-makers were aware of Plaintiff's protected conduct prior to taking the adverse employment actions described herein.

19. Following Plaintiff's protected activity, Defendant subjected Plaintiff to one or more materially adverse employment actions, as more fully described above, which would dissuade a reasonable employee from making or supporting a charge of discrimination.

20. A causal connection exists between Plaintiff's protected activity and the materially adverse employment actions taken against Plaintiff by Defendant, as evidenced by, among other things, the temporal proximity between the protected activity and the adverse actions, the circumstances surrounding the adverse actions, and other direct and circumstantial evidence of retaliatory motive.

21. Defendant's conduct, as described herein, constitutes unlawful retaliation against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). Defendant's retaliatory conduct was intentional, willful, and taken with reckless disregard for Plaintiff's federally protected rights.

22. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered, and continues to suffer, damages including lost wages, lost benefits, emotional

distress, humiliation, loss of career advancement, and other economic and non-economic losses, in amounts to be proven at trial.

## COUNT II

### *N/A*

SECTION VI — PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Edward Cecil Washington Jr. respectfully prays that this Honorable Court enter judgment in his favor and against Defendant American Express Company, and hereby requests that the Court grant the following relief:

(a)  A declaratory judgment declaring that Defendant's conduct, as described herein, constitutes unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and any other applicable federal law;

(b)  A permanent injunction ordering Defendant and its officers, directors, agents, employees, successors, and all persons acting in concert therewith to cease and desist from engaging in any further unlawful retaliatory employment practices in violation of federal law;

(c)  An award of compensatory damages for all past and future lost wages, lost employment benefits, and other economic losses sustained as a result of Defendant's unlawful conduct, in an amount to be proven at trial;

(d)  An award of compensatory damages for emotional distress, mental anguish, humiliation, loss of enjoyment of life, and other non-economic harm caused by Defendant's unlawful conduct, in an amount to be proven at trial;

(e)  An award of punitive damages against Defendant for its intentional, willful, and malicious violation of Plaintiff's federally protected civil rights, in an amount sufficient to punish Defendant and to deter future unlawful conduct, to be determined by the jury;

(f)  An award of reasonable attorneys' fees and all costs of this action pursuant to 42 U.S.C. § 2000e-5(k) and other applicable provisions of law;

(g)  An award of pre-judgment and post-judgment interest on all monetary awards at the maximum rate permitted by law;

(h)  Such other and further equitable, declaratory, and legal relief as this Court deems just, proper, and appropriate under the circumstances.

## SECTION VII — JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Edward Cecil Washington Jr. hereby demands a trial by jury on all issues and claims so triable as a matter of right in this action.

Respectfully submitted,

**Edward Cecil Washington Jr.**, *Plaintiff, Pro Se*
*319 East Grant Avenue*
*Roselle Park, NJ 07204*
*917.723.1132*
*edward.c.washington@outlook.com*
**Date:** June 23, 2026

*Complaint — Washington v. American Express Company — United States District Court, District of New Jersey*

Filed: June 23, 2026  |  PAGE NUMBER 13

## ATTACHMENT / EXHIBIT NOTICE
**Exhibit A:**  EEOC Notice of Right to Sue