**EDWARD CECIL WASHINGTON, JR.**
Plaintiff, Pro Se
319 East Grant Avenue
Roselle Park, New Jersey 07204
Telephone: 917-723-1132
Email: edward.c.washington@outlook.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWARD CECIL WASHINGTON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS NATIONAL BANK and AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.,<br><br>Defendants. | **Civil Action No. 2:26-cv-07546-CCC-SDA**<br><br>**Hon. Claire C. Cecchi, U.S.D.J.**<br>**Hon. Stacey D. Adams, U.S.M.J.**<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# FIRST AMENDED COMPLAINT

1. Plaintiff Edward Cecil Washington, Jr. ("Plaintiff"), appearing pro se, brings this First Amended Complaint against American Express National Bank ("AENB") and American Express Travel Related Services Company, Inc. ("TRS") for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

2. This First Amended Complaint arises from the same employment relationship, June 2023 internal complaint, compliance discipline, and April 22, 2024 termination alleged in Plaintiff's original Complaint.

3. Plaintiff originally named American Express Company based on the common American Express branding and the manner in which the affiliated American Express entities presented themselves to employees. After filing, Plaintiff reviewed his employment and EEOC records. His W-2 forms consistently identify TRS as his employer, while his EEOC Charge identified AENB and AENB, through outside counsel, responded to the Charge on the merits and described Plaintiff as its former employee.

4. Because the precise allocation of employment functions among the affiliated American Express entities is information principally within Defendants' possession, Plaintiff alleges in the alternative, as permitted by Federal Rule of Civil Procedure 8(d), that AENB and/or TRS was his employer within the meaning of Title VII and was responsible for the challenged employment actions.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under Title VII, 42 U.S.C. §§ 2000e et seq.

6. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(4).

7. Venue is proper in the District of New Jersey because Plaintiff resided and worked from New Jersey during the relevant period and substantial effects of the challenged employment actions were experienced in this District.

8. Plaintiff filed EEOC Charge No. 520-2025-00461 alleging race discrimination and retaliation. The Charge named American Express National Bank as Respondent.

9. By March 25, 2026, the EEOC notified Plaintiff by email that it had issued a final decision titled "Determination and Notice of Rights" concerning Charge No. 520-2025-00461. Plaintiff submitted his original Complaint to this Court on June 23, 2026.

## PARTIES

10. Plaintiff Edward Cecil Washington, Jr. is an adult individual residing at 319 East Grant Avenue, Roselle Park, New Jersey 07204. Plaintiff worked for American Express for approximately ten years and served as an Account Manager during the period relevant to this action.

11. Defendant American Express Travel Related Services Company, Inc. is an American Express entity with a principal business address at 200 Vesey Street, New York, New York 10285. Plaintiff's W-2 forms, including the W-2 associated with his final year of employment, consistently identify TRS as his employer.

12. Defendant American Express National Bank is an American Express entity. AENB was the Respondent named in Plaintiff's EEOC Charge. In a June 6, 2025 Position Statement submitted by outside counsel to the EEOC, AENB described Plaintiff as its former employee, addressed his employment history, supervisors, discipline, internal complaint, and termination, and defended the challenged actions on the merits.

13. At all relevant times, Defendants employed fifteen or more employees and were employers within the meaning of Title VII to the extent each exercised control over Plaintiff's employment or participated in the challenged employment decisions.

## FACTUAL ALLEGATIONS

### A. Employment History and June 2023 Ethics Complaint

14. Plaintiff is Black. He began working for American Express in 2014 and remained employed until April 22, 2024.

15. During the relevant period, Plaintiff worked as an Account Manager in the Global Commercial Services organization. His direct manager was Amy Dicker, who reported to Director David Banovetz.

16. In or about June 2023, after leadership removed a significant client account from Plaintiff, Plaintiff made an internal complaint through the Company's Ethics process concerning the handling

of the account and the conduct of Banovetz and other leaders namely Lisa Alich the Manager of Business Development and Kelly Moore her Director of Account Development. Lisa and my manager David made the decision to remove the account and never presented any documentation evidence of why. There was a client grievance internally to the client and Lisa decided to side with that contact instead of me, her colleague. I was never able to present that to David, so I filed an ethics complaint.

17. In that complaint and related discussions, Plaintiff stated that the treatment and handling of the situation felt like bias based on race. Plaintiff also made clear that he wanted the underlying business decision and account-removal process investigated on their own facts.

18. Plaintiff believed that Banovetz had participated in a decision that caused Plaintiff to lose a valuable business opportunity and bonus-related compensation without first obtaining Plaintiff's side of the dispute.

19. Amanda Soto, a Manager in Colleague and Labor Relations, facilitated the internal complaint. Plaintiff says he did not receive meaningful follow-up for months and contacted Soto again in December 2023.

20. Plaintiff alleges that Dicker, Banovetz, and higher-level leaders including Vice President Diana Yuen and Senior Vice President Aliyah Bokhari knew of the internal complaint or the circumstances surrounding it.

**B. "Bad Brand" Statements and Workplace Context**

21. During a 2023 American Express conference in Las Vegas, Plaintiff and another Black, long-tenured team member, Terrilynn Minnifield, learned that each had separately been told by management that he or she had a "bad brand."

22. Plaintiff recalls that Dicker used the "bad brand" description with him and attributed the description to Banovetz. Plaintiff understood Minnifield to have received the same description through management.

23. Plaintiff and Minnifield had each served on the team for many years. Plaintiff alleges that his formal mid-year and year-end evaluations and scorecards did not identify a performance history consistent with the "bad brand" label.

24. Plaintiff does not allege that the phrase "bad brand," standing alone, expressly referenced race. He alleges the circumstances as part of the overall context in which two Black, long-tenured members of the team were given the same negative characterization.

**C. Compliance Changes and First Discipline**

25. During 2023 and early 2024, Plaintiff's team was operating under changing call-recording and compliance requirements. Plaintiff recalls that the team went from having no standing compliance calls, to biweekly calls, and then to weekly calls shortly before his termination.

26. Plaintiff alleges that compliance guidance changed frequently and that team members repeatedly discussed confusion and concern about how the new requirements would be applied.

27. A recorded client call in January 2024 resulted in Plaintiff receiving a written compliance warning in early February 2024. Plaintiff disagreed with aspects of the charge but complied with management's instruction to acknowledge it.

28. Before Plaintiff was terminated, Dicker told Plaintiff that she had addressed similar violations by other employees through coaching and had coached employees concerning violations that she considered more serious.

29. Before Plaintiff's termination, White colleague Helene Kulic told Plaintiff that she had experienced a compliance issue similar to Plaintiff's first cited violation but had been coached rather than issued a formal violation. Kulic also told Plaintiff that she had received coaching concerning other compliance matters.

**D. Continued Ethics-Complaint Activity and Second Compliance Allegation**

30. In early April 2024, Banovetz repeatedly asked Plaintiff during a one-on-one meeting whether Plaintiff's ethics complaint was "over." Plaintiff did not tell Banovetz that he had withdrawn or abandoned the complaint.

31. Plaintiff alleges that the questioning was significant to him because Banovetz was one of the managers about whom Plaintiff had complained and Banovetz remained involved in Plaintiff's management chain.

32. Plaintiff was later informed by Dicker and Banovetz during a telephone call that a second compliance violation had been identified from another recorded client call.

33. Before his termination, Plaintiff was not provided the underlying recording, a transcript, or other evidence concerning the second alleged violation and therefore did not have an opportunity to review that material for himself before the termination decision was implemented.

34. Plaintiff does not allege in this pleading that the second recording did not exist. He alleges that he was not allowed to hear or review the evidence before termination and that other employees, according to statements made to him before termination, were coached for comparable or more serious compliance matters.

**E. April 22, 2024 Termination**

35. On the morning of April 22, 2024, before his termination was communicated, Plaintiff again contacted Soto in Colleague and Labor Relations concerning the still-unresolved ethics complaint and his concern that Banovetz might retaliate against him, including by affecting his efforts to obtain another internal position.

36. Later on April 22, 2024, Plaintiff was informed that his employment was terminated based on compliance-related conduct.

37. In its later EEOC Position Statement, AENB asserted that Dicker made the termination decision with input from Banovetz and other leaders, and elsewhere described Dicker as the ultimate decision-maker who delivered the termination decision.

38. Plaintiff alleges that Dicker knew about his internal complaint and also had told him before termination that she had used coaching for other employees who committed similar or more serious compliance violations.

39. Plaintiff further alleges that Banovetz, the subject of Plaintiff's unresolved complaint, remained involved in Plaintiff's management and provided input into the termination decision according to AENB's own later description of the process.

40. Approximately five months after Plaintiff's termination, Plaintiff learned from former colleagues that the team was reorganized, approximately thirteen employees under Banovetz were laid off with severance packages based on tenure, and the prior structure was replaced. Plaintiff later learned that a newly structured team was created and that only a small number of former team members were rehired after interviews. Plaintiff alleges these later events only as organizational context and not as an independent discriminatory act against him.

**F. EEOC Proceedings**

41. Plaintiff filed EEOC Charge No. 520-2025-00461 alleging race discrimination and retaliation arising from his April 22, 2024 termination and related events.

42. AENB, represented by Ogletree, Deakins, Nash, Smoak & Stewart, P.C., submitted a Position Statement to the EEOC on June 6, 2025. AENB addressed Plaintiff's claims on the merits and contested both race discrimination and retaliation.

43. The EEOC later issued a Determination and Notice of Rights. Plaintiff thereafter commenced this federal action.

**COUNT I - RETALIATION IN VIOLATION OF TITLE VII**

44. Plaintiff incorporates paragraphs 1 through 43 as if fully set forth here.

45. Title VII prohibits an employer from retaliating against an employee because the employee opposed conduct that he reasonably believed constituted unlawful discrimination.

46. Plaintiff engaged in protected opposition when, in connection with his June 2023 internal complaint, he communicated that he believed race bias may have affected his treatment.

47. Management personnel, including Dicker and Banovetz, knew of the complaint. The complaint remained a subject of discussion into 2024, including Banovetz's repeated questioning in early April 2024 about whether the complaint was over.

48. Plaintiff suffered a materially adverse action when Defendants terminated his employment on April 22, 2024.

49. Plaintiff alleges a causal connection based on the continuing unresolved complaint, management knowledge, the early-April questioning by Banovetz, Banovetz's input into the termination process, Plaintiff's renewed complaint to Labor Relations on the morning of April 22, and the alleged disparity between the treatment Plaintiff received and coaching that management said had been given to other employees for comparable or more serious compliance issues.

50. Plaintiff alleges that Defendants' stated compliance rationale was not the sole true reason for the termination and that retaliation for his protected opposition was a but-for cause of the decision.

51. As a result of the retaliation, Plaintiff suffered lost wages and benefits, lost employment opportunities, emotional distress, and other damages recoverable under Title VII.

## COUNT II - RACE DISCRIMINATION IN VIOLATION OF TITLE VII

52. Plaintiff incorporates paragraphs 1 through 43 as if fully set forth here.

53. Title VII prohibits an employer from discriminating against an employee with respect to the terms and conditions of employment because of race.

54. Plaintiff is Black and was qualified for the Account Manager position he had performed for many years.

55. Plaintiff suffered an adverse employment action when Defendants terminated his employment on April 22, 2024.

56. Plaintiff alleges circumstances supporting an inference of race discrimination, including that Dicker told him before termination that she had coached other employees for similar and even more serious compliance matters; White colleague Helene Kulic told Plaintiff before his termination that she had been coached rather than formally cited for a similar compliance issue; and Plaintiff and another Black, long-tenured team member had each been given the same negative "bad brand" characterization despite Plaintiff's allegation that his formal evaluations did not support that label.

57. Plaintiff alleges that the different treatment in the application of compliance discipline, together with the surrounding facts described above, permits an inference that race was a motivating factor in the decision to terminate him.

58. Plaintiff seeks discovery concerning the actual recordings, transcripts, compliance investigations, coaching and disciplinary records of comparable employees, decision-making communications, and the roles of the affiliated American Express entities in order to establish the full factual record.

59. As a result of the race discrimination, Plaintiff suffered lost wages and benefits, lost employment opportunities, emotional distress, and other damages recoverable under Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and award:

- A declaration that Defendants violated Title VII as alleged;
- Back pay, lost benefits, and other proven economic losses;
- Front pay or other appropriate equitable relief in lieu of reinstatement, as appropriate;
- Compensatory damages permitted by Title VII;
- Punitive damages to the extent permitted by law and supported by the evidence;
- Prejudgment and post-judgment interest as permitted by law;
- Taxable costs and any other relief available to a prevailing pro se litigant; and
- Such other legal or equitable relief as the Court deems just and proper.

## JURY DEMAND

60. Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

**/s/ Edward Cecil Washington, Jr.**
EDWARD CECIL WASHINGTON, JR.
Plaintiff, Pro Se
319 East Grant Avenue
Roselle Park, New Jersey 07204
Telephone: 917-723-1132
Email: edward.c.washington@outlook.com

Dated: October 2, 2026