**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EDWARD CECIL WASHINGTON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS NATIONAL BANK and AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.,<br><br>Defendants. | Hon. Claire C. Cecchi, U.S.D.J.<br>Civil Action No.: 2:26-cv-07546<br><br>**ORAL ARGUMENT REQUESTED** |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE FIRST AMENDED COMPLAINT AS UNTIMELY

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Tel: (973) 656-1600
Fax: (973) 656-1611
*Attorneys for Defendants American Express National Bank and American Express Travel Related Services Company, Inc.*

Of Counsel & On the Brief:

Harris S. Freier, Esq.
David J. Franzmathes, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

STATEMENT OF MATERIAL FACTS AND PROCEDURAL HISTORY ........ 2

Plaintiff Agreed to A Valid, Binding Arbitration Agreement ........ 2

The Arbitration Policy ........ 3

Plaintiff's Termination and Untimely EEOC Charge ........ 4

The Right-to-Sue Notice and This Action ........ 4

LEGAL ARGUMENT ........ 5

I. THE COURT SHOULD COMPEL PLAINTIFF TO SUBMIT HIS CLAIMS TO FINAL AND BINDING ARBITRATION ........ 5

A. Federal Law Favors Enforcement of Arbitration Agreements ........ 5

B. The Parties Have a Valid and Enforceable Agreement to Arbitrate ........ 7

i. Plaintiff Expressly Agreed to Be Bound by the Policy ........ 8

ii. Plaintiff Agreed to the Policy Through His Conduct ........ 8

iii. The Policy is Supported by Adequate Consideration ........ 9

iv. The Policy is Not Illusory or Unconscionable ........ 9

C. Plaintiff's Claims Are Within the Scope of The Arbitration Agreement ........ 10

D. The Arbitrability of Plaintiff's Claims is Likewise Subject to Arbitration ........ 11

E. Both AENB and TRS Are Entitled to Enforce the Policy. ........ 12

F. The Litigation Should Be Stayed Pending Arbitration ........ 13

II. ALTERNATIVELY, THE FAC SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO FILE A TIMELY EEOC CHARGE. ........ 14

A. Title VII Required Plaintiff to File His Charge Within 300 Days of His Termination. ........ 14

B. Plaintiff's Charge Was Filed 46 Days Too Late. ........ 15

C. Plaintiff Pleads No Basis for Equitable Tolling. ........ 15

CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)....16

*AT & T Technologies Inc. v. CWA*,
475 U.S. 643 (1986)....10

*Atalese v. U.S. Legal Servs. Grp., L.P.*,
219 N.J. 430 (2014)....11, 12, 15

*Baldwin Cnty. Welcome Ctr. v. Brown*,
466 U.S. 147 (1984) (per curiam)....20

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002)....13

*Bourgeois v. Nordstrom, Inc.*,
2012 WL 42917 (D.N.J. Jan. 9, 2012)....13

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)....10

*Crawford v. Compass Grp. USA*,
2015 WL 1006389 (D.N.J. Mar. 6, 2015)....11

*D.M. v. Same Day Delivery Serv., Inc.*,
2018 WL 4011660 (N.J. Super. Ct. App. Div. Aug. 23, 2018)....13

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....9

*Forsyth v. First Trenton Indem. Co.*,
2010 WL 2195996 (N.J. Super. Ct. App. Div. May 28, 2010)....13

*Fort Bend Cnty. v. Davis*,
587 U.S. 541 (2019)....18

*Garfinkel v. Morristown Obstetrics & Gynecology Assocs.*,
168 N.J. 124 (2001)....12, 14

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....9

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
716 F.3d 764 (3d Cir. 2013)....9

*Hirsch v. Amper Fin. Servs., LLC*,
215 N.J. 174 (2013) ....................16

*Horowitz v. AT&T Inc.*,
2019 WL 77331 (D.N.J. Jan. 2, 2019) ....................12

*James v. Glob. TelLink Corp.*,
852 F.3d 262 (3d Cir. 2017)....................11

*Jaworski v. Ernst & Young U.S. LLP*,
441 N.J. Super. 464 (App. Div. 2015) ....................12

*Jayasundera v. Macy's Logistics & Operations*,
2015 WL 4623508 (D.N.J. Aug. 3, 2015) ....................12

*Leodori v. CIGNA Corp.*,
175 N.J. 293 (2003) ....................11

*Level Export Corp. v. Wolz, Aiken & Co.*,
305 N.Y. 82 (1953) ....................11

*Levy v. AT&T Servs., Inc.*,
2022 WL 844440 (D.N.J. Mar. 22, 2022)....................11

*Martindale v. Sandvik, Inc.*,
173 N.J. 76 (2002) ....................10, 13, 15

*Mikula v. Allegheny Cnty.*,
583 F.3d 181 (3d Cir. 2009)....................18

*Morgan v. Sanford Brown Institute*,
225 N.J. 289 (2016) ....................12

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)....................18

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................10

*Nardi v. Povich*,
824 N.Y.S.2d 764, 2006 WL 2127714 (N.Y. Sup. Ct. July 31, 2006) ....................11

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)....................18, 19

*Ogunyemi v. Garden State Med._Ctr.*,
478 N.J. Super. 310 (App. Div. 2024) ....................11

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993)....................19

*Prinze v. Jonas*,
38 N.Y.2d 570 (1976)....................11

*Quigley v. KPMG Peat Marwick, LLP*,
330 N.J. Super. 252 (App. Div. 2000)....................13

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)....................15

*Richardson v. Coverall N. Am., Inc.*,
811 F. App'x 100 (3d Cir. 2020)....................16

*Rockland County v. Primiano Constr. Co., Inc.*,
51 N.Y.2d 1 (1980)....................11

*Ruehl v. Viacom, Inc.*,
500 F.3d 375 (3d Cir. 2007)....................19

*Sarbak v. Citigroup Glob. Mkts., Inc.*,
354 F. Supp. 2d 531 (D.N.J. 2004)....................10

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974)....................10

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014)....................19

*Matter of Smith Barney v. Luckie*,
85 N.Y.2d 193 (1995)....................11, 17

*Smith v. Spizzirri*,
601 U.S. 472, 144 S. Ct. 1173 (2024)....................17

*Turner v. Am. Express Co.*,
No. 25-cv-2365-ABA, slip op. (D. Md. Sept. 14, 2026) (ECF No. 23)....................14

*Watson v. Eastman Kodak Co.*,
235 F.3d 851 (3d Cir. 2000)....................18

*Zipes v. Trans World Airlines, Inc.*,
455 U.S. 385 (1982)....................20

**Statutes**

9 U.S.C. § 3....................15, 17

9 U.S.C. § 4 ..... 10

42 U.S.C. § 2000e-5(e)(1) ..... 18

42 U.S.C. § 2000e-5(f)(1) ..... 9

Civil Rights Act of 1964 Title VII ..... *passim*

FAA ..... *passim*

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ..... 5

National Labor Relations Act ..... 15

Sexual Assault and Sexual Harassment Act, 9 U.S.C. §§ 401-402 ..... 15

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..... 5

Rule 56 ..... 9

## PRELIMINARY STATEMENT

Defendants American Express National Bank ("AENB") and American Express Travel Related Services Company, Inc. ("TRS") (together, "Defendants" or "American Express") respectfully submit this Memorandum of Law in support of their Motion to Compel Arbitration and Stay Proceedings under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), or, in the alternative, to Dismiss the First Amended Complaint ("FAC") of *pro se* Plaintiff Edward Cecil Washington, Jr. ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff, a former Account Manager, asserts two Title VII claims (race discrimination and retaliation) arising from the April 22, 2024 termination of his employment. This case does not belong in this Court. On July 21, 2014, Plaintiff signed the American Express New Hire Employment Arbitration Policy Acknowledgement Form, in which he acknowledged that "arbitration is the final and exclusive forum for the resolution of all employment-related disputes between American Express and me that are based on a legal claim," expressly identified "Title VII of the Civil Rights Act of 1964" and "[w]histleblower or retaliation claims" as covered claims, and "agree[d] to waive [his] right to trial before a judge or jury in federal or state court in favor of arbitration under the Policy." Under the FAA, the Court should compel Plaintiff to arbitrate his claims and stay this action.

Alternatively, should the Court decline to compel arbitration, the FAC must be dismissed because Plaintiff failed to file a timely charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). Title VII required Plaintiff to file his charge within 300 days of his April 22, 2024 termination, *i.e.*, by February 16, 2025. Plaintiff did not sign and file his Charge of Discrimination until April 3, 2025, 346 days after his termination and 46 days after the statutory deadline expired. Because the only adverse action on which Plaintiff sues is his

termination, and because Plaintiff alleges no facts that could support equitable tolling, both counts are time-barred and should be dismissed with prejudice.

## STATEMENT OF MATERIAL FACTS AND PROCEDURAL HISTORY

### Plaintiff Agreed to A Valid, Binding Arbitration Agreement

Plaintiff alleges that he began working for American Express in 2014 and worked as an Account Manager in the Global Commercial Services organization until his termination on April 22, 2024. (FAC ¶¶ 14-15.) Plaintiff alleges that his W-2 forms identify TRS as his employer. (*Id.* ¶ 11.)[1]

In connection with his hire, on July 21, 2014, Plaintiff signed the American Express New Hire Employment Arbitration Policy Acknowledgement Form (the "Acknowledgement Form"). (Declaration of Jill Bosch ("Bosch Decl.") Ex. B.) The Acknowledgement Form bears Plaintiff's signature, his name, his employee number (6370752), his July 21, 2014 date of hire, and a work location of "TRS." (*Id.*) In it, Plaintiff acknowledged that he had "received and been given the opportunity to review the American Express Company Employment Arbitration Policy (the 'Policy')." (*Id.*) Plaintiff further acknowledged and agreed:

> I understand that arbitration is the final and exclusive forum for the resolution of all employment-related disputes between American Express and me that are based on a legal claim. I further understand that the employment related disputes subject to arbitration under the Policy include any claims arising under any federal, state or local statute, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment . . . including but not limited to the following: • Title VII of the Civil Rights Act of 1964 . . . • Whistleblower or retaliation claims . . ..
> . . .

[1]Plaintiff's Charge alleges a hire date of "on or around January 10, 2014," while the Acknowledgement Form and Defendants' records reflect a July 21, 2014 date of hire. (Counsel Cert. Ex. C; Bosch Decl. Ex. B.) The discrepancy is immaterial to this Motion.

> I agree to submit any and all employment related disputes based on a legal claim to arbitration, and agree to waive my right to trial before a judge or jury in federal or state court in favor of arbitration under the Policy.

(*Id.*)[2]

**The Arbitration Policy**

The Policy applies to "American Express Company and its subsidiaries (collectively, 'American Express' or the 'Company')." (Bosch Decl. Ex. A, § I.) AENB and TRS are each subsidiaries of American Express Company. (*Id.* ¶ 2.) The Policy provides that the agreement to be bound "creates a contract requiring both parties to resolve all employment-related disputes that are based on a legal claim through final and binding arbitration," that "[a]rbitration is the exclusive forum for the resolution of such disputes," and that "the parties mutually waive their right to a trial before a judge or jury in federal or state court in favor of arbitration under the Policy." (*Id.* § II.) The obligation to arbitrate "exists both during employment and after [the] employment with the Company ends." (*Id.* § II.A.)

Covered Claims include "all legal claims that an individual has or in the future may have against the Company or its officers, directors, shareholders, employees and/or agents and which arise out of or relate to an individual's . . . employment with the Company or separation from the Company," expressly including claims of "discrimination or harassment on the basis of race," "wrongful, retaliatory and/or constructive discharge," and claims under "Title VII of the Civil Rights Act of 1964, as amended." (*Id.* § II.B.) The Policy is mutual, binding the Company as well

---

[2] At the time of Plaintiff's separation, American Express had in place a revised Arbitration Policy (the "Revised Arbitration Policy"), which became effective in 2023. The Revised Arbitration Policy is substantively equivalent to the Policy as it relates to Plaintiff's waiver of a jury trial and agreement to submit to arbitration. Therefore, the Revised Arbitration Policy has no impact on the outcome of the present motion. A copy of the Revised Arbitration Policy has been included herewith. (Bosh Decl. at ¶ 11, Ex. C.)

as the employee, and it is "governed by the terms of the FAA." (*Id.* §§ II, II.A, V.E.) American Express bears nearly all arbitration costs, including all AAA fees beyond a filing fee capped at $125, and provides a legal-fee benefit of up to $2,000. (*Id.* §§ VI.A-C.) The Policy also provides that "any dispute that fails to state a claim upon which relief may be granted under applicable law" is not subject to arbitration, and that "[a]n arbitrator or a court of law with jurisdiction shall dismiss without a hearing on the merits, any matter that does not state a claim under applicable federal, state or local law." (*Id.* § II.C.5.)

**Plaintiff's Termination and Untimely EEOC Charge**

Plaintiff alleges that his employment was terminated on April 22, 2024. (FAC ¶¶ 14, 36, 48, 55.) Plaintiff alleges that he filed EEOC Charge No. 520-2025-00461 alleging race discrimination and retaliation "arising from his April 22, 2024 termination and related events." (*Id.* ¶¶ 8, 41.) The Charge, which names AENB as Respondent, identifies April 22, 2024 as both the "earliest" and "latest" date on which discrimination took place, and it was digitally signed by Plaintiff under penalty of perjury on April 3, 2025. (Certification of Harris S. Freier, Esq. ("Counsel Cert.") Ex. D.) April 3, 2025 is 346 days after April 22, 2024.

AENB responded to the Charge through a Position Statement dated June 6, 2025, in which it expressly asserted, "[a]s a threshold matter," that the Charge was "time-barred." (FAC ¶¶ 12, 42; Counsel Cert. Ex. F.)[3]

**The Right-to-Sue Notice and This Action**

On March 13, 2026, the EEOC issued a Determination and Notice of Rights stating that it "will not proceed further with its investigation," dismissing the Charge, and advising Plaintiff of

---

[3]Defendants do not concede that AENB was Plaintiff's employer, and TRS was not named as a respondent in the Charge. Defendants reserve all defenses, including those arising from Plaintiff's failure to name TRS in the Charge.

his right to sue within 90 days of receipt. (Counsel Cert. Ex. E.) Plaintiff alleges that "[b]y March 25, 2026" the EEOC notified him by email of the Notice. (FAC ¶ 9.) Plaintiff filed his original Complaint against American Express Company on June 23, 2026. (*Id.*; ECF No. 1.) He filed the FAC on October 3, 2026, substituting AENB and TRS as Defendants. (ECF No. 5.)[4]

## LEGAL ARGUMENT

### I. THE COURT SHOULD COMPEL PLAINTIFF TO SUBMIT HIS CLAIMS TO FINAL AND BINDING ARBITRATION

Where, as here, the existence of the agreement to arbitrate is established by documents outside the complaint, the motion to compel is evaluated under the summary judgment standard of Rule 56, and the Court may consider the agreement and supporting declarations. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771-76 (3d Cir. 2013). Further discovery is warranted only if the non-movant "comes forward with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement." *Id.* at 774 (internal quotation marks omitted). Where, as here, the movant presents a signed agreement and the non-movant cannot genuinely dispute its formation, the Court should compel arbitration without discovery. *See id.* at 776.

#### A. Federal Law Favors Enforcement of Arbitration Agreements

Federal policy strongly favors arbitration as an efficient and effective means for resolving disputes between parties. Congress enacted the FAA to reverse then-existing judicial hostility to arbitration agreements and "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Dean Witter*

[4] The Notice of Rights issued March 13, 2026, and Plaintiff filed suit 102 days later, on June 23, 2026. Plaintiff alleges he was notified of the Notice "[b]y March 25, 2026" (FAC ¶ 9), which, if credited, would place his filing on the 90th day. Defendants reserve the right to challenge the timeliness of this action under 42 U.S.C. § 2000e-5(f)(1), including in arbitration.

*Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20, n.6 (1985); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510, n.4 (1974). To that end, the FAA mandates that where a party to an arbitration agreement fails, neglects, or otherwise refuses to submit a matter to arbitration, the other party may seek to compel arbitration. *See* 9 U.S.C. § 4. Moreover, due to the strong public policy in favor of arbitration, the United States Supreme Court has emphasized that questions of arbitrability "must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "any doubts concerning the scope of arbitrable issues **should be resolved in favor of arbitration.**" *Id.* at 24-25 (emphasis added).

"State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *Sarbak v. Citigroup Glob. Mkts., Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004). "In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 94 (2002). Here, there is a clear, valid written agreement whereby the parties agreed that arbitration is the exclusive means of resolving disputes arising out of Plaintiff's employment, expressly including Title VII discrimination and retaliation claims such as those Plaintiff asserts here. Although the Policy selects New York law (Policy § VIII), the result is the same under New York or New Jersey law, and the Court need not resolve any choice-of-law question.[5]

---

[5] Pursuant to New York law, "[h]e who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them." So strong is the policy favoring arbitration that enforcement of an arbitration agreement "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Technologies Inc. v. CWA,* 475 U.S. 643, 650 (1986) (citations omitted). Accordingly, courts are "require[d] … to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods.*

### B. The Parties Have a Valid and Enforceable Agreement to Arbitrate

"Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *Levy v. AT&T Servs., Inc.*, 2022 WL 844440 at *3 (D.N.J. Mar. 22, 2022) (alteration in original) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)). "Therefore, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" *Id.* (quoting *Crawford v. Compass Grp. USA*, 2015 WL 1006389 at *3 (D.N.J. Mar. 6, 2015)). "To manifest assent, 'an offeree must provide 'unqualified acceptance,' which can be express or implied by conduct.'" *Id.* (quoting *Glob. TelLink Corp*, 852 F.3d at 265). An employee's signature on a form acknowledging receipt of an arbitration policy and agreeing to its terms is the clearest form of express assent. *See Leodori v. CIGNA Corp.*, 175 N.J. 293, 306-307 (2003).

Moreover, New Jersey law requires that, for an arbitration agreement to be enforceable in the employment context, it must clearly and unambiguously establish that an employee intended to waive the right to have their claim tried in a judicial forum. *Ogunyemi v. Garden State Med. Ctr.*, 478 N.J. Super. 310, 316 (App. Div. 2024); *see Atalese v. U.S. Legal Servs. Grp., L.P.*, 219

---

*Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (citations omitted), and to "resol[ve] [ ] any ambiguities as to the scope of the arbitration clause itself in favor of arbitration." *Matter of Smith Barney v. Luckie*, 85 N.Y.2d 193, 201 (1995). *Nardi v. Povich*, 824 N.Y.S.2d 764, 2006 WL 2127714 at *7 (N.Y. Sup. Ct. July 31, 2006) (*quoting Level Export Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87 (1953)). "On a motion to compel arbitration, if the court concludes that the parties made a valid agreement to arbitrate, that the dispute sought to be arbitrated falls within its scope, and that there has been compliance with any agreed on conditions precedent to arbitration, judicial inquiry is at an end … and the parties should be directed to proceed to arbitration." *Rockland County v. Primiano Constr. Co., Inc.*, 51 N.Y.2d 1, 8 (1980) (citations omitted). Further, under New York law, it is for the court, not the arbitrator, to decide whether both parties have made a valid agreement to arbitrate. *Rockland County v. Primiano Constr. Co., Inc.,* 51 N.Y.2d 1, 5 (1980); *Prinze v. Jonas,* 38 N.Y.2d 570, 574 (1976).

N.J. 430, 442 (2014). To accomplish a waiver of rights, "[n]o magical language is required." *Morgan v. Sanford Brown Institute*, 225 N.J. 289, 309 (2016). However, "[e]mployees should at least know that they have 'agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination.'" *Atalese*, 219 N.J. at 447 (*quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs.,* 168 N.J. 124, 135 (2001)).

**i. Plaintiff Expressly Agreed to Be Bound by the Policy**

The Acknowledgement Form meets each requirement. Plaintiff signed it on July 21, 2014 and it bears his name, employee number (6370752), and work location ("TRS"). (Bosch Decl. Ex. B.) The form is a single page, and its key terms are not buried in fine print. It states in plain language that arbitration "is the final and exclusive forum" for employment-related disputes, specifically names Title VII and "[w]histleblower or retaliation claims," the very claims Plaintiff now asserts, and expressly provides that Plaintiff "agree[s] to waive [his] right to trial before a judge or jury in federal or state court in favor of arbitration under the Policy." (*Id.*) That is precisely the type of explanation that *Atalese* requires. 219 N.J. at 447.

**ii. Plaintiff Agreed to the Policy Through His Conduct**

Plaintiff also manifested his assent by conduct. The Acknowledgement Form expressly advised Plaintiff that the Policy governed "any and all employment related disputes," and he thereafter remained employed by American Express for nearly ten years (from July 21, 2014 until April 22, 2024) without ever opting out of, objecting to, or seeking to revoke the Policy. (Bosch Decl. ¶ 11; FAC ¶ 14.) Continued employment after notice of an arbitration policy is sufficient conduct to signify acceptance. *See Jaworski v. Ernst & Young U.S. LLP*, 441 N.J. Super. 464, 474-75 (App. Div. 2015); *Jayasundera v. Macy's Logistics & Operations*, 2015 WL 4623508 at *4 (D.N.J. Aug. 3, 2015); *Horowitz v. AT&T Inc.*, 2019 WL 77331 at *8 (D.N.J. Jan. 2, 2019) (citing cases).

**iii. The Policy is Supported by Adequate Consideration**

"[I]n New Jersey, continued employment has been found to constitute sufficient consideration to support certain employment related agreements," including agreements to arbitrate. *Martindale*, 173 N.J. at 88; *see, e.g., Forsyth v. First Trenton Indem. Co.,* 2010 WL 2195996, at *8 (N.J. Super. Ct. App. Div. May 28, 2010) (compelling arbitration, finding plaintiff-employee's continued employment to constitute adequate consideration for agreement to arbitrate); *Bourgeois v. Nordstrom, Inc.*, 2012 WL 42917, *3-4 (D.N.J. Jan. 9, 2012) (finding continued employment constitutes adequate consideration for an agreement to arbitrate under New Jersey law); *Quigley v. KPMG Peat Marwick, LLP*, 330 N.J. Super. 252, 265-66 (App. Div. 2000) (finding continued employment can constitute adequate consideration for an employee's submission to demands of employer, including arbitration); *D.M. v. Same Day Delivery Serv.*, *Inc.*, 2018 WL 4011660, *4 (N.J. Super. Ct. App. Div. Aug. 23, 2018) ("An offer of employment or continued employment is adequate consideration for an arbitration agreement.").

Moreover, the Policy imposes mutual obligations: "both parties" must arbitrate covered disputes and "mutually waive" a judicial forum, and the obligation "extends to the Company." (Policy §§ II, II.A.) This mutual promise to arbitrate *independently* satisfies the consideration requirement. *See, e.g., Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists, and the arbitration agreement should be enforced.") (collecting cases). These facts compel the conclusion that Plaintiff received adequate consideration for agreeing to the Policy.

**iv. The Policy is Not Illusory or Unconscionable**

The Policy's modification provision requires written notice to employees, limits who may approve changes, and provides that no change applies to any Demand already filed or of which the

Company had notice. (Policy § VII.) Applying these exact Policy provisions, the District of Maryland recently rejected illusoriness and unconscionability challenges and compelled a former American Express employee to arbitrate. *Turner v. Am. Express Co.*, No. 25-cv-2365-ABA, slip op. at 10-15 (D. Md. Sept. 14, 2026) (ECF No. 23). The Policy's employee-favorable cost allocation, fee benefit, and procedural protections (Policy §§ IV, VI) confirm that it is fair and preserves every substantive right available to Plaintiff under Title VII.

### C. Plaintiff's Claims Are Within the Scope of The Arbitration Agreement

The New Jersey Supreme Court has explained the "scope" of an arbitration agreement as follows:

> The Court will not assume that employees intend to waive [statutory] rights unless their agreements so provide in unambiguous terms. That said, we do not suggest that a party need refer specifically to . . . or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. **To pass muster, however, a waiver-of-rights provision should at least provide that the employee *agrees to arbitrate all statutory claims arising out of the employment relationship or its termination.***

*Garfinkel*, 168 N.J. at 135 (emphasis added).

Here, there can be no question that the Policy encompasses Plaintiff's Title VII retaliation and race discrimination claims. The Acknowledgement Form expressly lists "Title VII of the Civil Rights Act of 1964" and "[w]histleblower or retaliation claims," and the Policy expressly covers claims of "discrimination or harassment on the basis of race," "wrongful, retaliatory and/or constructive discharge," and claims under "Title VII of the Civil Rights Act of 1964, as amended." (Bosch Decl. Ex. B; Policy § II.B.)

Each of Plaintiff's two counts challenges a single decision: the April 22, 2024 termination of his employment. (FAC ¶¶ 48, 55.) Count I alleges that Plaintiff was terminated in retaliation for his June 2023 internal ethics complaint, and Count II alleges that his termination was motivated by race. (*Id.* ¶¶ 44-59.) These are paradigmatic "legal claims" that "arise out of or relate to"

Plaintiff's "employment with the Company or separation from the Company." (Policy § II.B.) None of the Policy's narrow exclusions (criminal proceedings, unemployment and workers' compensation benefits, emergency injunctive relief, or National Labor Relations Act claims) apply. (*Id.* § II.C.) And Plaintiff alleges no sexual harassment or sexual assault dispute that could implicate the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, 9 U.S.C. §§ 401-402.

Courts routinely find statutory claims fall within an arbitration agreement's scope, even where the agreement does not reference the particular statute pursuant to which the claims are brought. *See, e.g., Martindale*, 173 N.J. at 95 (holding that an employment application containing an agreement to arbitrate claims arising out of employment was valid and applicable to statutory employment claims even though the agreement did not explicitly reference the particular statutes at issue); *see also Atalese*, 219 N.J. at 444-45 (collecting cases). The case for arbitration is even stronger here, where the agreement identifies by name the very statute under which Plaintiff sues.

**D. The Arbitrability of Plaintiff's Claims is Likewise Subject to Arbitration**

Parties are free to agree to arbitrate threshold questions, such as whether they have agreed to arbitrate, whether the agreement is enforceable, or whether their agreement covers a particular dispute. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010). Here, the Policy provides that its procedures are modeled on the American Arbitration Association's rules and that "[t]he AAA Rules shall govern issues not explicitly addressed by this Policy," and it vests the arbitrator with authority to "interpret and apply these procedures insofar as they relate to the arbitrator's powers and duties." (Policy §§ III, V.E.) The AAA Employment Arbitration Rules, in turn, empower the arbitrator to rule on his or her own jurisdiction, including objections to the existence, scope, or validity of the arbitration agreement. Courts in this Circuit have treated the

incorporation of AAA rules as clear and unmistakable evidence of an agreement to delegate arbitrability. *See Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103-04 (3d Cir. 2020). Accordingly, to the extent Plaintiff raises any dispute as to these threshold questions, such issues should be reserved for the arbitrator. In any event, as shown above, the Court may readily conclude that Plaintiff's claims are arbitrable.

**E. Both AENB and TRS Are Entitled to Enforce the Policy.**

The Policy defines "American Express" and the "Company" as "American Express Company and its subsidiaries," and it covers all claims an employee has "against the Company or its officers, directors, shareholders, employees and/or agents." (Policy §§ I, II.B.) AENB and TRS are both subsidiaries of American Express Company. (Bosch Decl. ¶ 2.) Plaintiff's own pleading confirms that the claims he asserts against each Defendant arise from a single employment relationship with "affiliated American Express entities": he alleges that his W-2 forms identify TRS as his employer, that his EEOC Charge named AENB as his employer, and, in the alternative, that "AENB and/or TRS" was his employer. (FAC ¶¶ 2-4, 11-12.) The Acknowledgement Form itself identifies Plaintiff's work location as "TRS." (Bosch Decl. Ex. B.) Each Defendant is therefore a party to, and may enforce, the Policy. Independently, Plaintiff's claims against both Defendants are identical and inextricably intertwined with the employment relationship the Policy governs, so he is equitably estopped from avoiding arbitration as to either. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (non-signatories may enforce arbitration agreements under traditional state-law principles, including estoppel); *Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 187-92 (2013). Plaintiff should not be permitted to split a single dispute between an arbitral forum and this Court merely by naming two affiliated entities.

### F. The Litigation Should Be Stayed Pending Arbitration

Pursuant to the FAA, arbitrable disputes should be compelled to arbitration and the proceedings stayed pending the outcome of arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 144 S. Ct. 1173, 1178 (2024). 9 U.S.C. § 3 states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

In *Smith*, the plaintiffs filed a lawsuit against the defendant in Arizona state court, alleging violations of federal and state employment laws. 144 S. Ct. at 1175. The defendant subsequently removed the case to federal court, and then filed a Motion to Dismiss and Compel Arbitration pursuant to the parties' arbitration agreement. *Id.* at 1175-76. The Court explained that the FAA mandated that courts "shall . . . stay" all proceedings pending arbitration of the arbitrable dispute. *Id.* at 1177 (quoting 9 U.S.C. § 3). Furthermore, an order to stay, rather than dismissing an action, allows matters to remain on the "court's docket" which "avoids costs and complications that might arise if a party were required to bring a new suit and pay a new filing fee to invoke the FAA's procedural protections." *Id.* at 1178. As a result, when "a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Id.*

As set forth herein, Plaintiff's Title VII retaliation and race discrimination claims are arbitrable under the Policy, and Defendants expressly request a stay. Defendants have invoked

their right to arbitrate in their first response to the FAC and have taken no action inconsistent with that right. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022). Defendants' alternative request for dismissal waive arbitration, as the Policy itself contemplates that "a court of law with jurisdiction shall dismiss without a hearing on the merits, any matter that does not state a claim." (Policy § II.C.5.) Accordingly, and pursuant to the FAA, it is respectfully submitted that the Court compel arbitration and stay the litigation.

## II. ALTERNATIVELY, THE FAC SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILED TO FILE A TIMELY EEOC CHARGE.

If the Court declines to compel arbitration, it should dismiss the FAC with prejudice because Plaintiff did not timely exhaust his administrative remedies.

### A. Title VII Required Plaintiff to File His Charge Within 300 Days of His Termination.

Before suing under Title VII, a plaintiff must file a charge with the EEOC within 180 days of the alleged unlawful employment practice, or within 300 days where, as in New Jersey (and New York), the plaintiff initially instituted proceedings with a state agency or the EEOC has a worksharing arrangement with one. 42 U.S.C. § 2000e-5(e)(1); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000); *Mikula v. Allegheny Cnty.*, 583 F.3d 181, 183 (3d Cir. 2009). A claim based on a discrete act, such as a termination, is time-barred if the charge is not filed within that period after the act "occurred." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-14 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act," and "termination" is a discrete act). Although the charge-filing requirement is not jurisdictional, it is a mandatory claim-processing rule that must be enforced when, as here, the employer timely raises it. *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 549-52 (2019). The requirement applies equally to Title VII retaliation claims. *See Morgan*, 536 U.S. at 114. Because the FAC expressly relies on the Charge and the EEOC's Notice of Rights (FAC ¶¶ 8-9, 41-43), the Court may consider those

documents on this motion without converting it to one for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Schmidt v. Skolas*, 770 F.3d 241, 249-51 (3d Cir. 2014).

**B. Plaintiff's Charge Was Filed 46 Days Too Late.**

The FAC identifies a single adverse action: Plaintiff's April 22, 2024 termination. (FAC ¶¶ 36, 48, 55.) Plaintiff's Charge likewise identifies April 22, 2024 as both the earliest and latest date of discrimination. (Counsel Cert. Ex. D.) Three hundred days after April 22, 2024 was Sunday, February 16, 2025. Even affording Plaintiff the benefit of the following Monday (Presidents' Day, a federal holiday) and Tuesday, February 18, 2025, Plaintiff's deadline expired long before he signed and filed his Charge on April 3, 2025, 346 days after his termination. (Id.) Both of Plaintiff's claims are therefore time-barred. *See Morgan*, 536 U.S. at 113-14.

Further, Plaintiff cannot rescue his claims through the conclusory allegation in his original Complaint that he "timely filed" a charge (ECF No. 1 ¶ 3); the Charge itself, which bears Plaintiff's own April 3, 2025 digital signature, controls over that unsupported assertion. (Counsel Cert. Ex. D.)

**C. Plaintiff Pleads No Basis for Equitable Tolling.**

Equitable tolling of Title VII's filing period is an extraordinary remedy, "to be applied sparingly," and is available only where (1) the defendant actively misled the plaintiff regarding the cause of action; (2) the plaintiff was prevented from asserting his rights in some extraordinary way; or (3) the plaintiff timely asserted his rights in the wrong forum. *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007); Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005). The plaintiff bears the burden of establishing tolling and must have exercised reasonable diligence. Ruehl, 500 F.3d at 384.

The FAC alleges no facts that could satisfy any of these grounds. Plaintiff does not allege that Defendants misled him, that anything prevented him from filing, or that he filed in another forum. To the contrary, the FAC and the Charge show that Plaintiff knew every fact on which his claims rest no later than the day he was fired. Plaintiff alleges that, in early April 2024, his director repeatedly asked whether his ethics complaint was "over," and that on the very morning of his termination he contacted Colleague and Labor Relations to express concern that he would be retaliated against. (FAC ¶¶ 30, 35.) His Charge recites those same facts and identifies no event after April 22, 2024. (Counsel Cert. Ex. D.) Plaintiff likewise alleges that he learned of the team's reorganization approximately five months after his termination, still well within the 300-day period, yet he waited more than six additional months to file. (FAC ¶ 40.) Plaintiff's pro se status does not warrant tolling. "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam). Likewise, the EEOC's processing of the Charge does not excuse the untimeliness. Indeed, AENB expressly raised timeliness "[a]s a threshold matter" in its Position Statement (Counsel Cert. Ex. F), and the EEOC dismissed the Charge without any merits finding. (*Id.* Ex. E.) *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (timeliness requirement subject to waiver, estoppel, and tolling only on a proper showing).

Because the untimeliness of the Charge cannot be cured by amendment, dismissal should be with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion, compel Plaintiff to arbitrate his claims pursuant to the Arbitration Policy, and stay this

action pending arbitration. In the alternative, Defendants respectfully request that the Court dismiss the First Amended Complaint in its entirety, with prejudice, as untimely.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
*Attorneys for Defendants American Express National Bank and American Express Travel Related Services Company, Inc.*

By: s/ Harris S. Freier
Harris S. Freier, Esq.

Date: November 11, 2026